IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:11-CV-01256-HLA-JBT

FRANK SHIVER, individually and
DAVID SHIVER, as the Personal
Representative of the Estate of
BETTY SHIVER,

        Plaintiffs,

v.

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC, a foreign limited
liability company and BRIDGESTONE
CORPORATION, a Japanese Corporation,

        Defendants.
_____/

## PLAINTIFFS' MOTION TO SPECIFY PRAYER FOR PUNITIVE DAMAGES

Frank Shiver and David Shiver, as the personal representative of the Estate of Betty Shiver (hereinafter "The Shivers" or "Shiver Plaintiffs") hereby respectfully file this Motion to Specify Prayer for Punitive Damages against Bridgestone Americas Tire Operations, LLC (hereinafter "BATO") and Bridgestone Corporation (hereinafter "BC"). For the reasons detailed herein, the Shiver Plaintiffs request that this motion be granted.

## FACTS RELEVANT TO MOTION

This case arises out of a fatal vehicle rollover crash that occurred as a result of a tread belt separation on a defective Bridgestone tire. On April 11, 2010, while on a Christian mission trip, Frank and Betty Shiver were traveling on the highway in a Ford van. Frank Shiver was driving and Betty was seated in the front passenger seat of the van. The tread belt violently separated on the left rear tire causing the van to go off the shoulder of the road, down the slope

and roll over. Due to the rollover crash, Betty Shiver's neck snapped and broke, and her vertebral artery, supplying blood to her upper neck and brain, was severed. She died in the hospital several days later due to these fatal injuries. Also as a result of the rollover crash, Frank Shiver suffered a brain injury, requiring two open craniotomies to remove hematomas and reduce pressure inside his skull.

During the course of discovery, the Shiver Plaintiffs obtained documents from the National Highway Traffic Safety Administration (NHTSA) that provide a basis for punitive damages in this case against Defendants BATO and BC. Specifically, the documents show that BATO and BC had *actual knowledge* of the tread belt separation problems affecting the Bridgestone R273 SWP II tire (the subject tire in this case); yet, BATO and BC continued selling the subject tire after being aware of these problems.

From the outset of this litigation Defendants BATO and BC requested the entry of a protective order in order to maintain the confidentiality of documents relating to the design, manufacture and testing of the subject tire on grounds that the documents contained trade secrets. This Court entered a stipulated protective order on November 14, 2012 [D.E. 63].[1] Subsequently, on or about November 27, 2012, Defendant BATO produced the import dates for the subject tire which showed that the Bridgestone R273 SWP II 245/75 R16 was imported into the United States between 2001 and 2007. Upon receiving this discovery, the Shiver Plaintiffs realized that the NHTSA testing must have placed the Defendants on notice that the subject tire was defective in its design in that, according to NHTSA's test results, the tire performed alarmingly below the performance level of all of its competitors. The documents from NHTSA are endurance drum

---

[1] Defendants' motion for protective order was filed on October 2, 2012 and the Court entered an Order denying that protective order on October 22, 2012. [D.E. 44 and 53]. Following this, the parties agreed to a stipulated protective order that was entered on November 14, 2012 [D.E. 63].

test results and high speed drum test results. In both tests, during "Condition 3," the Bridgestone R273 SWP II 245/75 R16 tire manufactured in Kurume, Japan ("Bridgestone SWP II"), the exact tire at issue in this case, failed. In fact, the Bridgestone SWP II tire failed 5 out of 5 times in the endurance test, and 4 out of 5 times in the high speed test. NHTSA performed the testing as part of its directive under the "Tread Act," an Act of Congress seeking higher safety standards for tires in response to the Bridgestone/Firestone tire failures of the 1990s. Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, Pub. L. No. 106-414 (codified in scattered sections of 49 U.S.C. (2000)).

On December 31, 2012, Defendant BC produced documents in response to the Plaintiffs' second request for production. The vast majority of the documents were in Japanese. On January 11, 2013, the Plaintiffs received the translations of some of those documents, including an internal memo from March of 2002 generated by Defendant BC which discusses the results of the NHTSA tests. The internal memo, ostensibly a memo written by and distributed among Bridgestone's quality assurance department, is found at page 1673 of BC's discovery response. See Exhibit 1.[2] Defendant BC notes in the memorandum that the endurance drum test results showed that "the biggest difference from tires of other manufacturers was that the tread on our tires completely separated under high speed and high load conditions." See Exhibit 1. BC further notes that this "phenomenon was not observed in tires made by other manufacturers." See Exhibit 1. With respect to this test, the subject tire failed five out of five test runs. With respect to the high speed drum test results, BC notes that 80 tires were tested from various manufacturers

---

[2] Exhibit 1, which is page 1673 of Defendant BC's discovery responses, is covered by the protective order entered by the Court on November 14, 2012. [DE 63]. This Motion is filed under seal as a result in compliance with paragraph 14 of that Order.

In addition, Exhibit 1 is the Plaintiffs' translated version of page 1673 which, in the original, is in Japanese. A copy of the Japanese original is also part of Exhibit 1.

3

and six failures were reported – four of those six failures were by the BC tire. See Exhibit 1. Defendant BC's tire (the subject tire in this case) failed four out of five times in the high speed drum test. In conclusion, BC documents that "a clear difference was seen between our tires and tires of other manufacturers." See Exhibit 1. Yet, this actual knowledge in early 2002 regarding the defective nature of the subject tire did not stop the Defendants from manufacturing the tire in this case (dated sometime between 2004 and 2006) that killed Betty Shiver.

The failures documented by NHTSA in the Bridgestone SWP II tires involved tread belt separations; the same type of failure that occurred when the Shivers' tire failed causing the rollover accident. NHTSA issued two reports spelling out its results, the first in October 2001. Defendant BATO acknowledges now, through the deposition of its corporate representative in this case, that it knew about the NHTSA test data relating to the Bridgestone SWP II tire back when the tire was released. (Queiser Depo., pp. 77–78). See Exhibit 2.

A comparison of the architecture between the Bridgestone SWP II tire and that of its competitors reveals that the Bridgestone SWP II tire is the only tire in the group not designed with a nylon cap-ply, a type of tire construction in which a full nylon overlay is inserted below the tread and above the last steel belt. Nylon cap-plies protect against tread belt separations. The competitor tires included in the NHTSA testing were Goodyear, Yokohama, and Pirelli; each of which contained a nylon cap-ply.

Despite the NHTSA testing data, Defendant BC made no architectural changes to the SWP II tire in response to the adverse NHTSA results. Instead, BC treated the results as a 'non-issue.' (Kobayashi Depo., pp. 161–64). See Exhibit 3. Defendant BC's corporate representative testified that Bridgestone felt no need to address any problems or differences exposed in the NHTSA testing because Bridgestone confirmed that the SWP II tire would satisfy the new safety

standard developed by NHTSA, a standard less stringent than Condition 3. In 2007, the same year the new Federal Motor Vehicle Safety Standard, FMVSS 139, became a requirement in the United States, Defendants BATO and BC pulled the SWP II tire from the market, and replaced it with the Duravis, a tire with a full nylon cap-ply construction, like those of its competitors who passed the NHTSA testing.

Defendant BC never improved the SWP II tire's performance in relation to Condition 3, and never tested the tire, or made any modifications thereto, in order to determine if it would or could pass Condition 3. Based on undisputed evidence in this case, the Shivers' SWP II tire was manufactured and distributed sometime after 2004, at a time when the NHTSA Condition 3 test results were known to Defendants BC and BATO. This actual knowledge of those test results and the Defendants' decision to take no action in response to that knowledge will support the Shiver Plaintiffs' theory that punitive damages are awardable in this case.

In their First Amended Complaint, the Shiver Plaintiffs pled that the dangers associated with the subject tire were "*known*" to BATO and BC. [DE 19, pp. 13, 17, 24, 28, 29]. After delineating the defects in the First Amended Complaint, the Shiver Plaintiffs specifically pled that "this danger was known . . . by BATO" and "these dangers were known . . . by Bridgestone Corporation." [DE 19, pp. 17, 24]. The Shiver Plaintiffs then prayed for all "other damages allowed by law" against the Defendants. [DE 19, pp. 28, 29]. By this Motion to Specify Prayer for Punitive Damages, the Shiver Plaintiffs merely seek to specify in their general prayer for damages that the "other damages" referenced therein include punitive damages based on evidence obtained during discovery which shows the Defendants' *actual knowledge* of the defective nature of the tire at issue in this case.

## MEMORANDUM OF LAW

It is settled federal law that "[a] federal plaintiff is not required to obtain leave of court or make a proffer of evidence before including a prayer for punitive damages." *Gallina v. Commerce and Industry Ins.*, No. 8:06-cv-1529, 2008 WL 389591, at *1–5, 4 (M.D. Fla. Aug. 15, 2008); *see also Cohen v. Office Depot., Inc.*, 184 F.3d 1292, 1298–99 (11th Cir. 1999), *vacated on other grounds,* 204 F.3d 1069 (11th Cir. 2000) (holding that Fed. R. Civ. P. 8(a)(3) preempts Fla. Stat. § 768.28's requirement that a plaintiff proffer evidence showing a reasonable basis for recovery when asking for punitive damages). In federal diversity cases, the pleading component of Florida Statute, Section 768.28 does not apply to requests for punitive damages. *Gallina*, 2008 WL 389591, at *1. "When pleading punitive damages, a plaintiff must merely comply with Federal Rule of Civil Procedure 8(a)(3), which requires 'a concise statement identifying *the remedies* and the parties against whom relief is sought.'" *Cohen*, 184 F.3d at 1297, (emphasis added); *Deiparine v. Siemens Med. Solutions USA Inc.*, N0. 6:10-cv-677, 2010 WL 5479653, at *1–5, 5 (M.D. Fla. Dec. 2, 2010) (this Court held that the plaintiff's complaint sufficiently complied with F.R.C.P. 8(a) because plaintiffs pled that "Angiomat was 'defective and in an unreasonably dangerous condition' and that Defendants 'knew or should have known that the lack of air detection safety device unnecessarily exposed patients to the danger of inadvertent air injection and death[;]'" thus, a prayer for punitive damages relief was proper). Furthermore, "a request for punitive damages is *not a 'claim'* within the meaning of F.R.Civ.P. 8(a)(2); it is only part of the *relief* prayed for in a claim.'" *Gallina*, 2008 WL 389591, at *4 (quoting *Cohen*, 184 F.3d at 1297). (Emphasis added).

Here, as in *Deiparine*, the Shiver Plaintiffs First Amended Complaint contains allegations sufficient to state a claim for punitive damages in that they allege that the subject tire was

defective and unreasonably dangerous and, specifically, that the Defendants *knew* about the defect, i.e., had actual knowledge that the defect existed. Under Florida law, punitive damages may be imposed in a products liability action when the defendant *knows* of the defect but chooses not to remedy the dangerous condition. *Toyota Motor Co., Ltd. v. Moll*, 438 So. 2d 192, 194 (Fla. 4th DCA 1981) ("[P]unitive damages . . . [are] allowed where the defendant had knowledge of a defect or dangerous condition and chose not to remedy the condition.") (*quoting American Motors Corp. v. Ellis*, 403 So.2d 459, 468 (Fla. 5th DCA 1981)). Evidence of the Defendants' knowledge of the defect, through the NHTSA testing, and their decision not to remedy the problem (obtained through deposition testimony) already exists in this record. Thus, the Shiver Plaintiffs' general prayer for damages, combined with sufficiently pled facts in the operative complaint establishing the basis for punitive damages, supports the relief requested in this motion to specify that the Shiver Plaintiffs will seek punitive damages. *Gallina*, 2008 WL 389591, at *4; *Deiparine*, 2010 WL 5479653, at * 5.

Since Florida Statute, Section 768.28 does not apply, the only word arguably missing from the First Amended Complaint is the word "punitive." Yet, the Shiver Plaintiffs believe that "punitive damages" are properly subsumed within their general prayer for damages where they prayed for all "other damages allowed by law" against the Defendants. The Shiver Plaintiffs are filing this motion in an abundance of caution with the intent to place the Defendants on notice that the Plaintiffs will seek punitive damages by way of clarification of their prayer for relief.[3] If

---

[3] The Defendants may contend that this motion should be denied given the Court's admonition that motions to amend are disfavored after entry of the scheduling order which was dated April 12, 2012. However, this is a technical amendment at most since the Plaintiffs are not adding a new claim, but rather are clarifying that the damages they are seeking include punitive damages. *See, e.g., Gallina*, 2008 WL 389591, at *4 (quoting *Cohen*, 184 F.3d at 1297) (a plaintiff's request for punitive damages is not a claim within the meaning of Rule 8). In *Bush v. Bahia Sun Associates, Ltd.*, 2009 WL 963133, *6 (M.D. Fla., Apr. 8, 2009), the Court held that

granted, the Shiver Plaintiffs would seek to add the following underlined phrase to paragraph 111(a) and (b) of their First Amended Complaint:

> 111. As a direct and proximate result of the above-described negligence, BETTY SHIVER died and the Shiver Plaintiffs are entitled to recover the following damages:
>
> a. DAVID SHIVER, as Personal Representative of the Estate of BETTY SHIVER, is entitled to recover the loss of prospective net accumulations and medical and funeral expenses that have become charges against the Estate, and other damages allowed by law, including punitive damages;
>
> b. FRANK SHIVER, as surviving spouse of BETTY SHIVER, is entitled to recover for mental pain and suffering as a result of his wife's death, loss of his companionship and protection, and the future loss of the support and services of BETTY SHIVER from the date of death, and other damages allowed by law, including punitive damages, through the Personal Representative; and

Moreover, the filing of this motion does not implicate or adversely affect in any way the pretrial and trial deadlines presently in place. The Shiver Plaintiffs do not need any additional time to conduct discovery to establish a basis for punitive damages. The present discovery deadline is March 1, 2013 and no extension of that date will be sought as a result of this motion.[4] Thus, again, the purpose of the relief requested by this motion is limited to a technical amendment placing the Defendants on notice, in an official manner, that the Shiver Plaintiffs will seek punitive damages.

---

the plaintiff's request in that case was not "an amendment to set forth new allegations, but rather as a clarification of what Plaintiffs originally plead and stated in their complaint." *See, also, Pinto v. Microsoft Corp.*, 2012 WL 4479059, *4 (S.D. Fla., Sept. 28, 2012) (allowing a technical amendment, noting that amendments may even be granted at trial pursuant to Rule 15). Thus, this technical amendment or clarification should be permitted since even substantive amendments should be freely granted per Rule 15.

[4] The Shiver Plaintiffs understand and acknowledge that in the event this motion is granted, the Defendants have the right to test the legal sufficiency of punitive damages by way of a dispositive motion, the deadline for which is March 29, 2013.

## **CONCLUSION**

Based on the foregoing, the Shiver Plaintiffs respectfully request that this motion be granted.

## **CONFERRED WITH OPPOSING COUNSEL**

Pursuant to Local Rule 3.01(g), undersigned counsel for the Shiver Plaintiffs has contacted counsel for Defendants BATO and BC regarding this motion.  The Defendants do not agree to the relief requested herein.

## **CONCLUSION**

WHEREFORE, the Shiver Plaintiffs respectfully requests that this Court grant this Motion.

Respectfully submitted,

**RATZAN LAW GROUP, P.A.**
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
Telephone (305) 374-6366
Facsimile (305) 374-6755
stuart@ratzanlawgroup.com


**BOLDT LAW FIRM**
215 South 21st Avenue
Hollywood, Florida 33020
Telephone: (954) 921-2225
Facsimile: (954) 921-2232
kboldt@boldtlawfirm.com

By: /s/ Kimberly L. Boldt
         KIMBERLY L. BOLDT
         Florida Bar No. 957399

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on March 4, 2013, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF, which will send a notification of such filing (NEF) to the following attorneys in the attached service list. This Motion is being filed per the Court's Order dated March 4, 2013. [DE 84].

By: /s/ Kimberly L. Boldt

**SERVICE LIST**

Stuart Ratzan, Esquire
RATZAN LAW GROUP, P.A.
1450 Brickell Avenue, Suite 2600
Miami, Florida  33131
Phone:  (305) 374-6366
Facsimile:  (305) 374-6755
stuart@ratzanlawgroup.com

Lee P. Teichner, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Phone: (305) 374-8500
Facsimile (305) 789-7799
Lee.Teichner@hklaw.com

Christina M. Schwing, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Phone: (305) 374-8500
Facsimile (305) 789-7799
Christina.Schwing@hklaw.com

Charles Cartwright, Esquire
GONZALEZ & CARTWRIGHT
813 Lucerne Avenue
Lake Worth, Florida 33460
Phone: (561) 533-0345
Facsimile: (561) 533-0195
ccartwright@gonzalezcartwright.com

Eric L. Ray, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Phone: (305) 374-8500
Facsimile (305) 789-7799
Eric.Ray@hklaw.com